# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| JEN GONZALEZ, JOHN and/or JANE DOE, et al, on behalf of themselves and all others similarly situated.<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. _____<br><br>(Formerly Case No. 21-ca-015221 in the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida) |

## NOTICE OF REMOVAL

Defendant Charter Communications, Inc. ("Charter"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby removes the above-captioned action from the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, case number 21-ca-015221, to the United States District Court for the Middle District of Florida, Tampa Division. Removal is proper because the Court has subject-matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). In support, Charter provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

## NATURE OF REMOVED ACTION

1. On September 14, 2023, Plaintiffs Jen Gonzalez and John and/or Jane Doe (collectively, "Plaintiffs"), filed this putative class action complaint, alleging claims related to the unavailability of certain television channels on Charter's "Spectrum" brand

from August 31, 2023 to September 11, 2023. *See* Exhibit 1 (Sept. 14, 2023 Class Complaint or "Compl.").[1]

2. The Complaint asserts three causes of action against Charter, namely: (1) breach of contract; (2) a Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim; and (3) a Florida Consumer Collection Practices Act ("FCCPA") claim. Compl. ¶¶ 42-61. Plaintiffs have brought the breach of contract and FDUTPA claim on behalf of the entire nationwide putative class and brought the FCCPA claim on behalf of a putative Florida sub-class. *See id.*

3. The thrust of Plaintiffs' allegations is that Charter purportedly failed to "fulfill contractual obligations, and engag[ed] in deceptive trade practices" by "continued billing for services not delivered." *Id.* ¶ 14.

4. This case is subject to removal based on CAFA, which creates federal court jurisdiction over class actions where: (1) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (2) the number of putative class members is greater than 100, and (3) the amount in controversy exceeds $5 million. 28 U.S.C. §§ 1332(d)(2), (d)(2)(A), (d)(5)(B).

5. This action satisfies CAFA's requirements for removal to federal court. *First*, complete diversity exists between named Plaintiff Gonzalez, who is a citizen of Florida, and Charter, which is incorporated in Delaware and has its principal place of

---

[1] On September 5, 2023, Plaintiffs filed another putative class action complaint against Charter in this District. *See Gonzalez v. Charter Communications, Inc.*, No. 8:23-cv-01994, ECF 1 (M.D. Fla.). That complaint failed to identify any basis for this Court to exercise jurisdiction over the lawsuit. So the complaint was dismissed, sua sponte, for lack of subject matter jurisdiction on September 7, 2023. *Id.*, ECF 7. Because the two actions share the same parties and claims, Charter has marked this action as related to the action previously dismissed.

business in Connecticut. *Second*, Plaintiffs allege a putative class of at least 100,000 members. And *third*, the amount in controversy exceeds $5 million based on Plaintiffs' putative class claims for breach of contract and violations of the FDUTPA and FCCPA.

6. In accordance with 28 U.S.C. § 1446(a) and the Local Rules of this Court, a copy of the Complaint is attached as **Exhibit 1**. A copy of the State Court Docket Sheet is attached as **Exhibit 2**. A copy of all other process, pleadings, and orders served on Charter or otherwise on file with the state court are attached as **Exhibit 3**. A copy of the Civil Cover Sheet is attached as **Exhibit 4**. A copy of Charter's most recent Form 10-Q filing with the SEC is attached as **Exhibit 5**. A copy of a Declaration of Christy Flores in Support of Removal is attached as **Exhibit 6**.

## TIMELINESS OF REMOVAL

7. Charter was served with the Complaint on September 22, 2023. Defendant has not responded to the Complaint in state court.

8. In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely because it was filed within 30 days of service of Charter. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint); Fed. R. Civ. P. 6 (noting that "in computing any time period specified" in "any statute," "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."); *see also White v. PDB State Farm Mut. Auto. Ins. Co.*, 2013 WL 6061890, at *1 (M.D. Fla. Nov. 18, 2013) ("This Notice was filed timely because the thirtieth day for removal fell on a weekend.").

## PROPRIETY OF VENUE

9. Venue is proper in this Court under 28 U.S.C. § 1441(a) because the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida—where the state court action was pending before removal—is a state court within this federal district and division.

## BASIS OF REMOVAL

### Class Action Fairness Act Jurisdiction

10. This Court has original jurisdiction over this action under CAFA, 28 U.S.C. § 1332(d), and removal jurisdiction under 28 U.S.C. § 1441.

11. Under CAFA, federal court jurisdiction over class actions exists where: (1) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (2) the number of putative class members is greater than 100, and (3) the amount in controversy exceeds $5 million. 28 U.S.C. §§ 1332(d)(2), (d)(2)(A), & (d)(5)(B).

12. Plaintiffs' action satisfies CAFA's minimal diversity requirement. *See* 28 U.S.C. § 1332(d)(2)(A). The named Plaintiff is a citizen of Florida. Compl. ¶ 20. Charter is incorporated in Delaware and has its principal place of business in Connecticut. **Exhibit 5** at Cover. Accordingly, complete, and not just minimal, diversity exists among the parties.

13. There are also at least 100 putative class members. *See* 28 U.S.C. § 1332(d)(5)(B). In their Complaint, Plaintiffs identify their proposed class as "[a]ll individuals in the United States who are current customers of Defendant, whose access to Disney Owned television channels were affected by the Spectrum Charter blackout." Compl. ¶ 29. And "[w]hile the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, it is estimated to be at or above 100,000."

*Id.* ¶ 31. Based on Charter's most recent Form 10-Q filing with the SEC, Plaintiffs' putative class may exceed 14 million members, with each Charter residential video subscriber potentially affected by the alleged loss of Disney channels. *See* **Exhibit 5** at 14 (identifying over 14,071,000 residential video subscribers to Charter).

14. Finally, the amount in controversy in this proceeding exceeds $5 million. *See* 28 U.S.C. §§ 1332(d)(2). "A defendant seeking to remove a case to federal court must file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)). But "[w]hen the plaintiff contests or the court questions the defendant's allegation, the defendant must prove by a preponderance of the evidence that the amount in controversy is sufficient." *Anderson*, 943 F.3d at 925. That determination "is less a prediction of 'how much the plaintiffs are ultimately likely to recover,' than it is an estimate of how much will be put at issue during the litigation." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010)). The court may review any evidence submitted with the notice of removal, as well as make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to help determine the amount in controversy. *Pretka*, 608 F.3d at 754. In the end, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.*

15. Here, the amount placed in controversy by Plaintiffs' claims far exceeds CAFA's $5 million minimum. Plaintiffs' proposed class, based on Plaintiffs' own allegations and Charter's Form 10-Q filing with the SEC, could conceivably include all residential video subscribers who lost access to Disney channels—a number as large as 14

million members. *See* Compl. ¶ 29 (identifying putative class as "[a]ll individuals in the United States who are current customers of Defendant" purportedly affected by the unavailability of Disney channels); **Exhibit 5** at 14 (identifying over 14,071,000 residential video subscribers to Charter). So to meet the $5 million amount-in-controversy requirement under CAFA, each conceivable class member must only be seeking to recover more than $0.35 ($5 million ÷ 14 million putative class members = $0.35 per member). *See, e.g., McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (even nominal recovery of $1 per class member would satisfy the amount-in-controversy requirement where the proposed class consisted of 10 million members).

16. That threshold is easily met here. To illustrate, Plaintiffs' breach-of-contract and FDUTPA claims independently permit per-member recovery greater than $0.35. Both turn on the value of the service that Charter purportedly failed to provide here—*i.e.*, certain television channels for a period of roughly ten days. *See* Compl. ¶ 47 (breach-of-contract claim; Plaintiffs "seek[] legal remedies, including restitution for the overcharges and an order requiring Charter Spectrum to fulfill its contractual obligations by providing the Disney channels as agreed upon in the contract"); *id.* at ¶ 52 (FDUTPA claim; "[P]laintiffs may request reimbursement for the period of time they paid for these channels, and they were not provided by Defendant"). As Plaintiffs allege in the Complaint, Charter "promised to issue a refund for services." *See id.* ¶ 7. And as both the Declaration of Christy Flores in Support of Removal and contemporaneous media reports demonstrate, Charter credited customers at least $6, or as much as $15, for the unavailability of Disney channels. *See* **Exhibit 6** at ¶ 6; Kiplinger, "Charters Offers Charter Offers $15 Credit Amid Ongoing Disney Dispute, Reports Say," Yahoo News,

(Sept. 5, 2023), available at https://finance.yahoo.com/news/charter-offers-15-credit-amid-233434354.html.

17. While Charter vigorously disputes that Plaintiffs have suffered any damage, that credit may serve as a proxy for possible damages allegedly suffered by putative class members. *See Farman v. Deutsche Bank Nat'l Tr. Co. as Tr. for Long Beach Mortg. Loan* 311 So. 3d 191, 195 (Fla. 2d DCA 2020) ("On a claim for breach of contract, the purpose of a damages award is to restore an injured party to the same position that he would have been in had the other party not breached the contract." (internal quotation marks omitted)); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (for a FDUTPA claim, "the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." (internal quotations omitted)). Importantly, however, "[a]ny inquiry into whether [the putative class members] *would* actually recover these amounts is unnecessary and inappropriate. For the purposes of establishing jurisdiction, it is enough to show that [they] *could*." *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 732 (11th Cir. 2014).

18. Charter has made that showing here: Because its offer of at least a $6 credit for purported television channel outages greatly exceeds the $0.35 per member damages recovery threshold, this action in turn greatly exceeds the $5 million amount-in-controversy requirement under CAFA. *See, e.g.*, *Fox v. Ritz-Carlton Hotel Co.*, 977 F.3d 1039, 1048–49 (11th Cir. 2020) ("Even though class members may have overpaid only some percentage of the total bill each time they ate at the hotel's Florida restaurants, added up over hundreds of thousands of customers across four years at ten Ritz-Carlton

7

hotels and forty-nine restaurants, we do not need to suspend reality to conclude that the overpayment was more than $5 million.").[2]

19. For these reasons, CAFA provides the Court with subject-matter jurisdiction over this action.

## OTHER REMOVAL ITEMS

20. Under 28 U.S.C. § 1446(b)(2)(A), all Defendants that have been properly joined must join or consent to removal.

21. Charter consents to removal, as indicated by counsel's signatures below.

22. Pursuant to 28 U.S.C. § 1446(d), Charter is contemporaneously filing a Notice of Filing Notice of Removal with the clerk of the state court where the lawsuit has been pending and will serve that notice on Plaintiffs.

**WHEREFORE**, Charter removes this action, now pending in the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, case number 21-ca-015221, to this Court.

*[Signature Appears on Following Page]*

---

[2] Plaintiffs' FCCPA claim alone places $ 1.5 million into controversy, even if only alleged on behalf of a Florida sub-class. *See* Compl. at 14 (seeking "an award of statutory damages, actual damages, and punitive damages as provided by the Florida Consumer Collection Practices Act"). Under the FCCPA, the maximum compensatory damages provided for a class is $500,000, Fla. Stat. § 559.77(2), and where, as here, a plaintiff seeks punitive damages, that number is trebled to $1.5 million, Fla. Stat. § 768.73(1)(a). *See McDaniel*, 568 F. App'x at 732 (applying same FCCPA damages provisions to meet CAFA's amount-in-controversy requirement). If Plaintiffs' putative class *could* recover the maximum $1.5 million from their FCCPA claims, then each conceivable class member *would* need only recover more than $0.25 on a per member basis ($5 million – $1.5 million ÷ 14 million putative class members = $0.25 per member). *See id.* But with or without consideration of Plaintiffs' conceivable FCCPA damages, this action satisfies CAFA's $5 million amount-in-controversy requirement either way.

Dated: October 23, 2023

/s/ Ryan D. Watstein
WATSTEIN TEREPKA LLP
Ryan D. Watstein, Fla. Bar No. 93945
1055 Howell Mill Road, 8th Floor
Atlanta, GA 30318
Telephone: 404-782-0695
ryan@wtlaw.com

Judson Brown, P.C. (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue
Washington, D.C. 20004
Telephone: 202-389-5000
judson.brown@kirkland.com

*Counsel for Charter Communications, Inc.*